```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
DARRYL K. MANNING,

                        Plaintiff,
                                                11 Civ. 7105 (LLS)
            - against -
                                                OPINION AND ORDER

METAL LATHERS' LOCAL 46 PENSION FUND
and the JOINT BOARD OF TRUSTEES OF
METAL LATHERS' LOCAL 46 PENSION FUND,
in its capacity as Administrator of
Metal Lathers' Local 46 Pension Fund;
et al.

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - X
```

Plaintiff Darryl K. Manning challenges the denial of his claim for disability pension benefits by the defendant pension plan's administrator ("the Trustees") under Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). At the time of his application for benefits, Manning had accumulated 48 pension credits, which are awarded on the basis of earnings from and time spent in employment covered under the pension plan. The Trustees determined that he needed 60.

The parties' cross-move for summary judgment on Manning's claims for the pension benefits, for an award of penalties for the defendants' failure to provide him certain documents, and for attorney's fees. For the reasons which follow, Manning's motion is denied, and the defendants' motion is granted.

1

1.

On or about September 19, 2002, Manning "sustained injuries, while working, to his neck, back and right shoulder for which he was awarded New York State Workers' Compensation benefits," and disability benefits from the Social Security Administration. Pl.'s July 23, 2012 Br. at 2. On May 7, 2009, he applied for a disability pension from the defendants.

Two documents informed Manning of the eligibility requirements for benefits under the pension plan: the Rules and Regulations of the Metal Lathers Local 46 Pension Fund dated January 2001 (the "Plan"), and the summary plan description issued in 1991 and amended in 2000 (together, the "SPD").

The Plan's Section 3.10 addresses those requirements as follows:

### 3.10 DISABILITY PENSION - ELIGIBILITY

Effective with respect to applications received on or after January 1, 1989, a Participant may only Retire on a Disability Pension if he becomes totally disabled after he has earned at least 60 Pension Credits and has earned a minimum of one Pension Credit either in each of the two calendar quarters immediately preceding the calendar quarter in which he became totally disabled or in the calendar quarter in which the disability occurred and the preceding calendar quarter. Notwithstanding the above, if a Participant was collecting Weekly Accident and Sickness Benefits (or was eligible for same but for the receipt of No-Fault Automobile Insurance Benefits) from the Metal Lathers Local 46 Trust Fund or collecting Workers' Compensation Benefits or New York State Unemployment Insurance Benefits during the two calendar quarters immediately preceding the calendar quarter in which he

became permanently and totally disabled, he shall be eligible for a Disability Pension only if, prior to his receipt of Accident and Sickness Benefits (or eligibility for same but for receipt of No-Fault Automobile Insurance Benefits) or Workers' Compensation Benefits or New York State Unemployment Insurance Benefits, he earned at least one Pension Credit in each of the two calendar quarters immediately preceding the receipt of such benefits or in the calendar quarter in which such benefits were received and the immediately preceding calendar quarter.

Plan[1] at 10.

The SPD contains somewhat different language:

**When would I be eligible to retire on a Disability Pension?**

You may retire on a Disability Pension if you become totally disabled after having earned at least 60 Pension Credits, and you earned at least one Pension Credit in each of the two calendar quarters immediately preceding the calendar quarter in which you became disabled, or in each of the calendar quarters in which you became disabled and the previous calendar quarter.

However, if you were eligible for Weekly Accident and Sickness Benefits from the Metal Lathers Local 46 Trust Fund or collecting Workmen's Compensation Benefits or New York State Unemployment Insurance Benefits during the two calendar quarters immediately preceding the calendar quarter in which you became permanently and totally disabled, you may still be eligible for a Disability Pension if you earned at least one Pension Credit in each of the two calendar quarters immediately preceding the calendar quarter in which you became eligible to receive either the Weekly Accident and Sickness Benefits or Workmen's Compensation or New York State Unemployment Insurance Benefits, or in each of the calendar quarters in which you became eligible to receive Weekly Accident and

---

[1] Attached as Ex. A to the July 27, 2012 Kilada Aff.

3

       Sickness Benefits or New York State Unemployment Insurance Benefits, and the previous calendar quarter.

SPD[2] at 9.

       On October 6, 2009, the Trustees denied Manning's application for disability pension benefits, stating that "Section 3.10 of the Rules and Regulations of the Metal Lathers Local 46 Pension Fund provide that a participant may only retire on a disability pension if he has become totally disabled after he has earned at least 60 Pension Credits" and "The records of the Metal Lathers Local 46 Pension Fund disclose that you have earned a total of 48 Pension Credits." Denial of Claim[3] at 1.

       Manning appealed, claiming he fell under an exception, provided in the SPD, to the 60 pension credit minimum service requirement. Manning contended that the SPD's "use of the words <u>however</u> and <u>you may still be eligible</u>" "was clearly designed to carve out an exception" for participants who, as he, were collecting workers' compensation benefits at the time of their disability and were working when they became eligible for those benefits. Appeal[4] at 2 (emphasis in original).

       The Trustees denied the appeal. They rejected Manning's claim that the SPD contained any exception to the 60 credit minimum service requirement, stating that his receipt of workers' compensation benefits exempted him from only the

---

[2] Attached as Ex. D to the July 22, 2012 Decl. of Wayne Schaeffer.
[3] Attached as Ex. E to the Mar. 29, 2012 Kilada Aff.
[4] Attached as Ex. F to July 27, 2012 Kalida Aff.

4

requirement of ongoing work at the time of his disability. Hany Kilada, the Acting Administrator of the fund, explained:

> It is the opinion of the Trustees of the Metal Lathers Local 46 Pension Fund that the rules and regulations impose two requirements for the receipt of a disability pension. The first is sixty pension credits and the second is employment or the receipt of benefits in calendar quarters contiguous to that in which the disability occurred. The purpose of the latter provision is to avoid a substantial period of time intervening between the participant's last employment and his disability.

Denial of Appeal at 2.[5]

Manning now claims that both the Plan and the SPD establish the exception: the Plan by its use of the words "Notwithstanding the above" in Section 3.10, and, as he stated in his appeal, the SPD by its use of the word "However" on its page 9.

The text of neither document is so clear as to bar reasonable argument whether Manning's receipt of workers' compensation benefits exempts him from the requirement of 60 pension credits as well as the requirement of ongoing work at the time of disability, or from only the requirement of ongoing work at the time of disability. Although the effect of Manning's interpretation is to impose a minimum service requirement of 60 pension credits on participants who were working at the time of their disability, but not on participants who were instead receiving accident and sickness, unemployment,

---

[5] Attached as Ex. G to Mar. 29, 2012 Kilada Aff.

or workers' compensation benefits at that time, that result is not obviously arbitrary or absurd. As Manning states, without contradiction, "it is not uncommon for disability pension plans to waive minimum service requirements where the genesis of the permanent disability is work related." Pl.'s July 23, 2012 Br. at 10. Thus, both interpretations are reasonable, and the provisions are ambiguous.

2.

Under Section 6.03 of the Plan,

> The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan, and decisions of the Trustees shall be final and binding on all parties.

Because that language clearly "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989), I must defer to the Trustees' determination and accept their interpretation of the Plan. See Pagan v. NYNEX Pension Plan, 52 F.3d 438, 443 (2d Cir. 1995) (under deferential review, "Where it is necessary for a reviewing court to choose between two competing yet reasonable interpretations of a pension plan, this Court must accept that offered by the administrators.").

Manning contends that the Trustees are not owed deference because the SPD is silent about their discretion to apply and

interpret the terms of the Plan.  The Second Circuit rejected that argument in Tocker v. Philip Morris Companies, 470 F.3d 481, 488 (2d Cir. 2006), holding against the participant because he could not identify any provision in ERISA or its implementing regulations requiring disclosure of the Trustees' discretionary authority in the SPD, and because he

> was not likely to have been harmed by the SPD's failure to describe the plan administrator's discretionary authority for coverage decisions. See Mario, 313 F.3d at 764 ("[T]he standard of judicial review ... simply fixes the procedure to be followed after a denial has occurred, and therefore a plan participant cannot be prejudiced by a lack of knowledge about that procedure."); Martin v. Blue Cross & Blue Shield, 115 F.3d 1201, 1205 n. 4 (4th Cir. 1997).

ERISA does not require "the SPD to contain language setting the standard of review," Thurber v. Aetna Life Ins. Co., 12-370-cv, 2013 WL 950704, at *4 (2d Cir. Mar. 13, 2013), and Manning makes no claim of prejudice.  The Trustees' determination is therefore affirmed.

3.

Manning claims the defendants are liable to him for penalties under "29 U.S.C. § 1132(c)(1), in an amount equal to the sum of $100 per day," for "failing and refusing to furnish" him with updated copies of plan documents, and with other documents relating to his claim for benefits, after Manning

requested that information in an April 20, 2010 letter. Compl. ¶ 68.

The letter, addressed to Acting Administrator Kilada, used 10021 as the zip code of his office. Kilada claims he never received the letter and that his office's zip code "changed in or about 2010 from 10021 to 10075-2037." July 27, 2012 Kilada Aff. ¶¶ 4-8.

The defendants "sent to Plaintiff, after the first pre-trial conference with the Court" held on February 3, 2012, "all of the information upon which the Defendants relied, including the information which Plaintiff requested and the complete file of the Pension Fund in regard to Plaintiff's application." Defs.' July 30, 2012 Br. at 13-14. Manning does not claim any portion of his request remains unsatisfied.

Under 29 U.S.C. § 1132(c)(1),

Courts have discretion in levying penalties, both in determining the per diem amount and the duration of defendants' delinquency. The Second Circuit has listed five factors for courts to consider in exercising this discretion:

    1)    the administrator's bad faith or intentional conduct;

    2)    the length of delay;

    3)    the number of requests made;

    4)    the extent and importance of the documents withheld; and

> 5) the existence of any prejudice to the participant or beneficiary.

Payne v. POMCO Group, 10 Civ. 7285 (BSJ), 2011 WL 4576545 (S.D.N.Y. Sept. 30, 2011) (citation omitted).

Because there is no claim or evidence the Trustees' acted in bad faith, failed to respond to multiple requests, or prejudiced Manning, Manning's claim for penalties is denied. See id. ("The outcome would be no different for Plaintiff had Defendants supplied these documents sooner. Therefore, the imposition of a penalty would accomplish little, in terms of providing relief for Plaintiff or improving Defendants' administration of the Local 235 Fund.").

Manning's claim for attorneys fees under 29 U.S.C. § 1132(g)(1) is also denied because he has neither prevailed on his other claims nor established that the defendants' acted in bad faith. See Salovaara v. Eckert, 222 F.3d 19, 27 (2d Cir. 2000) (listing "the degree of the offending party's culpability or bad faith" and "the relative merits of the parties' positions" as considerations in determining whether to award attorney's fees under 29 U.S.C. § 1132(g)(1)).

9

## CONCLUSION

Defendants' motion for summary judgment, Dkt. No. 7, is granted, and the plaintiff's motion for summary judgment, Dkt. No. 15, is denied.

The Clerk is directed to enter judgment dismissing the complaint with prejudice, with costs and disbursements to the defendants according to law.

So ordered.

Dated: New York, NY
       March 28, 2013

*Louis L. Stanton*
———————————
Louis L. Stanton
U.S.D.J.